Thank you, Your Honor. May it please the Court, Steve Bruchetto for the plaintiff, Danny Snapp. I would like to reserve three minutes for rebuttal. Your Honor, this is a disability discrimination case. There's three jury instruction issues on appeal, and there are appellate issues regarding the denial of two motions. In our view, all of them are important and all of them substantive. I'm going to address as many as I can in the limited time that I have. In the trial court, the plaintiff requested a jury instruction regarding the interactive process on the reasonable accommodation duty. The court did not instruct on the interactive process, rather just giving a model instruction from the Ninth Circuit. In our view... And as I read the record, you actually asked for an instruction that would have instructed the jury to determine whether or not some sort of interactive process had been asked for. We did. And that instruction was never given. That instruction was not given. Yeah. There are several reasons that the failure to give that instruction was important in this case. Number one is the outcome of SNAP 1 in front of the Ninth Circuit. In SNAP 1, the Ninth Circuit panel decided that there was a material factual dispute as to whether Burlington Northern, in good faith, engaged in an interactive process to arrive at accommodation. That was the issue that was highlighted by the Ninth Circuit. The Ninth Circuit said the failure to do so would be discrimination. On remand, then, what we were trying was the interactive process. So it's central. I understand what you said about the mem dispo that came down from the Ninth Circuit in SNAP 1, that the failure to do so, failure to engage in the interactive process, was itself discrimination. That is what the literal words say, but in context, I don't think that's what they mean. It might mean, rather, that if there's a failure to engage in the interactive process, then certain consequences flow, such as burden of production and so on. I don't read that mem dispo as saying, if there was no interactive process, you win. End of story. I don't necessarily, I'm not here to argue that question. I mean, the issue for me is, regardless, we're entitled to the instruction, and we're entitled to the instruction because it's the central issue in the case. Well, I do think you're entitled to the instruction for the jury to determine whether or not Mr. SNAP's letter, in fact, was a request for an interactive process just to determine accommodation, and you didn't get it. Correct. Then my question is, what's the consequence of not getting it? And in our view, that instruction is important, not only because it's a central issue in the case, but because under Barnett, a jury is entitled to infer that the failure to initiate the process is evidence that the employer is protecting or shielding or not disclosing possible accommodations. That goes to the central finding in the case leading to liability. We were deprived of the benefit of proof that Burlington Northern breached the duty by failing to have the instruction given to the jury. I also believe that in the absence of the instruction, the instructions the jury, the Court gives become misleading, because what the Court told the jury is plaintiff must prove that plaintiff notified the employer of his desire for accommodation. And second, plaintiff must prove that the employer could have reasonably accommodated plaintiff in the essential functions of a position. Now, let me ask you something. This case would have been made a little easier if there had been some special interrogatories, because if the jury had found that you didn't prove the very first element, that there was a notification, then you don't even have to get to the interactive process, right? Correct. But as I understand it, there were no special interrogatories to indicate on which prong of the burden of proof you fell down on? Correct. It was a challenge. Was anybody asked for special interrogatories? Because I think there's one of the most hotly contested issues, I think, in this whole case, is whether that letter even puts the company on notice that he wanted an accommodation or that they should start the interactive process. I disagree with the factual underpinning of the question, but in answer to the direct question, I honestly don't recall whether either party asked for special interrogatories. You asked for an instruction, but not for a special verdict. I don't recall if there was a request for a special verdict on the question. I asked for instructions, and I objected to the failure to instruct, and defense counsel also asked for instruction on the interactive process, in part because both parties asked for the instruction. We argued it very strongly, opening, closing, and they agreed that that was done, and were very surprised when the Court declined to instruct on the topic. Let me ask you this, because it puzzles me, actually, that the district judge didn't give the instruction. How strong was the objection when the district judge didn't give the instruction? Very strong. Very strong. And what was the judge's response? My recollection, and actually I just read that yesterday, the judge's response was, in this case, I'm not going to do anything but the model instructions. That's it. And that literally was his response. My inference is that the judge had seen this case reversed once. Maybe he didn't see a clear what he should do on the interactive process, and so decided that he was going to take the safest route. But I'm reading into it. I think one of the problems is the instruction you asked for basically said, if the company didn't engage in the interactive process and there had been a request for them to do so, I win. I agree. That is sort of what your instruction says. What do you think, assuming he had instructed on the interactive process and assuming the jury had found that you had made a request and that the company had not engaged in it, so what's the next step? What happens at that point? Well, that leads to the issue of Morton and the burden of proof. I don't believe that we ask the court for an instruction saying, if you find they didn't engage in the interactive process and there's a request, Plaintiff wins. Rather, what we said is defendant must prove an affirmative defense. And the affirmative defense is can you show me your proposed instruction? I've got all the ERs in front of me. Where am I? I want to make sure I see the precise words of the instruction that you asked for. Sure. I read it earlier, but I need a little help getting back to it. We have two instructions that were read together, and they are 27 and 28, located at ER 132 and 133. I'm after you. These are your proposed instructions? Yes. Okay. Say again the page numbers. ER 132 and 133. Okay. 130. Okay. I got it right. Okay. So. Excuse me. ER 132 and 138 are our two instructions. Okay. 132 is the interactive process. 138 is the affirmative defense. But you ended by saying if Plaintiff proves defendant failed to initiate the interactive process or to participate in good faith, your verdict should be for the Plaintiff. And then you have a bracket, which you say shouldn't be given, but I guess you give the district judge at least that option. Yes. But basically the way you would want the instruction to read was verdict should be for the Plaintiff. I don't think the word basically is fair. I mean, we raised an objection that they hadn't pleaded an affirmative defense. We said this is an affirmative defense. If you're going to let them do that in spite of the fact that it's not pleaded, here's the appropriate language. But the defense essentially would be that, you know, they have to prove that no accommodation is possible. And that's what Morton says. As I read that bracket, you insert the defense there. You can insert the defense there or you can give a separate instruction, which is 138, that says defendant is not liable for a breach of the duty to provide reasonable accommodation. If defendant proves no reasonable accommodation of Plaintiff's disability was possible. Okay. And where was the other side would be willing to do it? Where was the instruction relative to this that was proposed by the defense? It is in ER 133. 133. Okay. And? Yeah, so when a request for reasonable accommodation has an obligation to engage in an interactive process. So in a way, the district judge was invited by both sides to instruct the jury that something happens when an interactive process is requested. Definitely. And that, as I read the instructions actually given, that's nowhere in the actual instructions. Correct. Yeah. I mean, that's my problem with the case. Let me take a moment, because I do want to talk about the issue of the motion for judgment as a matter of law, motion for partial summary judgment, and the question Judge Malloy asked about whether that first letter was a request for accommodation. The Court characterized it as a hotly disputed issue. I believe we're entitled to, and were entitled to, judgment as a matter of law on that issue. They look at the letter and say that the letter isn't sufficiently clear. Well, actually, there's two letters, one in January, one in February. They look at the letters and say that the letters aren't sufficiently clear to invoke an accommodation. And then they offer the testimony of the person who received the letter, the first that she didn't understand it was a request for accommodation. I believe that if you actually look at the quoted testimony, she admits that it's a request for accommodation. And here's the testimony that they cite in the supplemental excerpt of record at 334. The significance of the testimony is she admits it's a request for accommodation,  In our view, you know, a plaintiff isn't required to go through some process that's not set out. Their folks are supposed to recognize, you know, when somebody is asking to return to work under accommodation and handle it appropriately. And here's the language. And this was at the examination of defense counsel. Answer. So this is part of the contract with Cigna. This is Mrs. Emery testifying. They provide not only disability benefits, but also an opportunity for rehabilitation when it is appropriate and or making accommodations that they will pay for to the company that employs the individual. So the individual can come back to work. That's what she understood the letter to be asking. Did you respond to the request? I did. I asked Mr. Snap to contact Cigna because this is a provision of the contract with Cigna, and it's part of the whole contract, so it's multiple benefits. It's the disability. It's the rehabilitation. And it is the reasonable accommodation. Later on, cross-exam in front of me, she admitted the same thing. She understood it was a request for reasonable accommodation. She just wasn't trained in what to do. In your view, she didn't understand what reasonable accommodation meant and who was required to provide the accommodation. Yes. And that's not plaintiff's burden. That's your view of the case. It is. It is. And so we view with both the 30b-6 testimony and even the evidence they offered that we were entitled to a determination that he requested accommodation. Why don't we hear from the other side, and you've saved a little time. Thank you. May it please the Court. I'm Brittany Pierce, Counsel for the Appellee Burlington-Northern Santa Fe Railway. This is the second time that we're before this Court on Mr. Snap's appeal. The first was when BNSF won its summary judgment, and Mr. Snap appealed, and this Court held that there were genuine issues of material fact necessary to have a full trial. We did have that trial. Mr. Snap is now appealing the jury verdict, and he wants this Court to be doing two things. First, he wants this Court to substitute its judgment for what the jury found. And second, he wants this Court to create new law and new jury instructions in the circuit. But the jury was not instructed to determine whether there was a request for accommodation, and it wasn't instructed what to do if it found that there was such a request and that there was no interactive process. Do you agree with that? There were instructions on whether or not there was a reasonable accommodation. There was not an instruction on whether or not there was an interactive process. Nor was there an instruction as to whether or not there had been a request to determine whether there was a request for such a process? Whether there was a request for the interactive process, no. There were no instructions about the interactive process. But as I read Morton, that request or the determination of whether there was such a request and then if such a request had been made, whether there had been such a process, that's critical in determining who has the burden of production. You know, I disagree with how you're arguing this analysis of those cases. I think that the ---- To be sure, you're disagreeing with my reading of Morton? Yes, I am. And I'm disagreeing with the entire history of case law about these issues. Good. Yes, so come at me with that. And the reason is that there was the Morton case came out relying on the Ninth Circuit Barnett case. After that, the U.S. Supreme Court decided U.S. Airways v. Barnett, reversing Barnett, essentially invalidating Morton and finding the burden shifting was at summary judgment only. At trial, the plaintiff bears the burden of proof for ---- Now, wait a second. Where do we find that in the Supreme Court opinion? The Supreme Court opinion mentions it when talking about the balance of undue hardship. But it's then the cases after that that go on to talk about it expressly. The Dark v. Curry case talks about it. It's mentioned in Giebler. There is a District Court of Hawaii case, the Yonemoto case, which does an entire analysis about this line of cases and what the burden of proof is. And it holds that the plaintiff does have the burden of proof at trial based on these line of cases and how the cases went from Morton all the way through Dark v. Curry and the Giebler case as well, and the Humphrey case as well. I have enormous respect for the district judges in our circuit, but they don't get to tell us what the law is. I understand that. And I think what this District of Hawaii Court case did is that it analyzed those cases that you mentioned, the Morton case. It said that in Morton, the only commentary was in dicta. It analyzed the U.S. Supreme Court decision in U.S. Airways v. Barnett, analyzed the Dark v. Curry. So it just lays out the analysis that already exists. It's not telling the courts or the Ninth Circuit what to do. It's simply walking through the steps. And beyond that, it analyzed what every other circuit had done as well. And there is not a single circuit that finds that the burden of proof at trial is on the defendant to prove whether or not a reasonable accommodation exists. So what is the penalty, so to speak, or consequences of an employer who fails to engage in the interactive process after being requested to provide a reasonable accommodation? Is it anything beyond they're going to have a tough time winning that summary judgment? It's certainly that they are going to have a very tough time winning its summary judgment. And beyond that, the Ninth Circuit does not recognize an independent cause of action for the interactive process. I think how it was done in this case made a lot of sense. The plaintiff got to argue the interactive process, got to talk about it to the jury, did so at length. But there was no confusing instruction to the jury stating what is inaccurate, which is that the interactive process is an independent cause of action, because that's not the law in our district. And even if there was an instruction on the interactive process, it doesn't matter because there still needs to be a reasonable accommodation that exists. And that was not the case here. Did the plaintiff put on any evidence of a reasonable accommodation or any jobs that the railroad had that would accommodate that request? Yes, in two regards. First, the plaintiff claimed that there were two potential accommodations. One was a leave of absence for an indefinite period of time. He had requested 90 days, but there was no return to work given by his doctor. The second was because he applied for a job which he had no seniority for and knew he had no seniority for, that BNSF should have just reassigned him to some other job of its choosing. Also at trial, he said, there were many jobs I could have applied for and could have looked at on the website, but the testimony is he never once went to the website, never once made a single application for any other job. Now, underlying all of this is that he did not have a release to return to work in any capacity. His own doctor did not release him to return to work. Well, I don't think the ADA requires that a person apply for a job on a website. I think the ADA requires that you engage in a process where between the two of you, you come up with some jobs that he is qualified to do with or without accommodation. He doesn't have to apply through an application process, in my view. I agree. He doesn't have to. There's not one way, one thing he has to do. But he has to do something. Instead, what happened was that for years and years and years, his communication with BNSF was only about reinstating his long-term disability benefits. Those were canceled because he did not undertake the sleep study as required by CIGNA. And so when those were canceled in 2005, he still communicated with BNSF only about reinstatement of benefits, not even once about trying to get a job in any capacity. It was only when BNSF learned that the benefits had been terminated two years later, it gave him another 60 days. At this point, there was an obligation on both parties to participate in some sort of interactive process. BNSF sent an initial letter to Mr. Snap. Mr. Snap responded with a very dense 10-page letter in response that was unclear, cited to CIGNA's policies, and just to clarify what Ms. Emery's testimony was, because it wasn't fully stated previously, what was your understanding of what Mr. Snap was asking for in this letter to you? She answers, the primary request was, again, reinstatement of his disability benefits, wanting to have a response to the November letter, and wanting to better understand where BNSF stood in trying to assist him. She understood that this was all part of the disability benefit reinstatement. Another question, so you're saying in here when he says benefits rehabilitation, the reasonable accommodation, those things are all done by CIGNA? Right, that's part of the contract with CIGNA. Is that in the contract with CIGNA? Yes, it is. She understood this was all about disability benefit reinstatement. From this point, she did respond, said, you can talk to your HR representative, you can go to the website, you have options for you. Instead, what Mr. Snap did was he called up a yard, said, do I have seniority for this job? They said no. The union said that he did not have seniority as of 1982. He still sent a letter to BNSF just a couple days before the end of the 60-day period ended and applied for one job and one job only, which was a job he knew he couldn't have. After that, in that same letter, he says, simultaneously, I want to request another leave of absence. He requested 90 days in the letter, but his doctor's note didn't release him for work at any date. And her testimony at trial was that this letter was not intended to be a release to work in any capacity. And since then, there was no release put forth. This is not Mr. Snap upholding his end of what is supposed to be an interactive process. So, no, there's not a specific, you know, step that he must do. We understand plaintiffs can have, you know, expressed something, but this, in fact, shows the opposite. His actions show that he, in fact, did not want to be working. And a reasonable jury could find that. When we're looking at this motion for judgment as a matter of law, this is, you have to take everything in BNSF's favor. You have to look at what a reasonable jury could or could not find based on the evidence. And it can look at all of the evidence in front of it, the letters, the testimony, and can make its own determinations. And based on those things, it could have determined, first, that no reasonable accommodation existed, because he couldn't work in any way in any capacity. It also could have determined that Mr. Snap was the one responsible for breaking down the interactive process. And third, it could have determined that Mr. Snap failed to request a reasonable accommodation. The Ninth Circuit said that February 28th letter, in which he attempted to mark up for the job he didn't have, there was a dispute over what that really meant. The jury got to make that decision. Now, any one of those three things means that Mr. Snap's appeal on his motion for partial summary judgment, on his motion for judgment as a matter of law, fails. And this Court should be affirming what the district or what the jury found in the district court. If you don't mind, I'd like to go back to Morton. Let's assume, and I understand you contest it, let's assume that the Morton footnote 7 accurately states the law of the Ninth Circuit, and that despite the extensive and very careful analysis of Judge Seabright in the Onomoto case, actually that footnote does state the law. If that is so, was there a problem with the jury instructions in failing to instruct the jury, number one, that it had to find whether there was a request for accommodation, and number two, that there was a failure to engage in the interactive process? There wasn't a problem, even if you accept that as true, and here's why. Okay. Even if you talked about the interactive process, that does not eliminate the need for a reasonable accommodation to exist. Now, even if you say the defendant has the burden of proving a reasonable accommodation. Well, the defendant has the burden of proving that there is none, right? I'm sorry. Yes, thank you. The defendant has the burden of proving there is no reasonable accommodation that exists. That happened here. So even if you are analyzing this under Morton, if you are... No, I'm not sure that really happened here. I understand what you're saying about what Mr. Snapp applied for, and I agree with you that he applied for a job for which he was not eligible, but give me more as to why you think the defendant proved there was no reasonable accommodation available. For two reasons. First, he did not have any release to work in any capacity, so there is no job he could have done at that moment in time with or without any reasonable accommodation. The second is, the only other possible option is a leave of absence. A leave of absence for an indefinite period is not a reasonable accommodation, especially after he had been on a leave of absence for nine years. And the Dark v. Curry case talks about this. It talks about recovery time of an unspecified duration may not be a reasonable accommodation, especially where he doesn't state when and under what conditions he could return to work. There's also the Larson v. United Natural Foods case, which I don't believe is precedential but is persuasive, talking about an indefinite but at least a six-month-long leave of absence is not a reasonable accommodation. Here we have had a nine-year-long leave of absence. BNSF kept him on as an employee, helped him with his benefits, getting them reinstated time and time again. At the end of the line, after these years, gave him an additional 60 days, find something, work with us. Mr. Snapp didn't have anything he could do at that point. His doctor said he couldn't do anything and had no idea when, if ever, he could. I guess we'll hear from the other side. As I read the record, his doctor said you can't do anything that would endanger yourself or others because of your tendency to fall asleep. But that's not to say he couldn't do any job. I disagree. I believe that the record shows that the letter that Mr. Snapp said, that he would be capable of performing light-duty work once further treatment had been optimized, but his doctor's testimony in her deposition, which was used at trial, is that this was not in any way intended to be a release to work in any form. Her prior letter about this, I believe the year prior, had said that he was permanently disabled, that he had no intention of ever being able to be fully recovered to come back to work. So if you take her... This might have been a slip of the tongue. You said no intention. What you mean is no capacity. No capacity. I apologize. Yes. And so given that her testimony buttressing what we know to be the extended leave of absence he had already taken with no set date that he could potentially return to work in the future and no intention of releasing him, the doctor no intention of releasing him to work at that time, means there is no accommodation that would have been possible. And, again, if you're looking at this, you know, through the lens of what the jury got to see, they got to see all of the evidence, they got to weigh this evidence, and that's what the Ninth Circuit asked it to do the first time we were on appeal. And that's what the jury did. And looking at all this evidence found that Mr. Snapp could not prove his claims for disability discrimination in this case. Just to wrap up really quickly, Your Honors, the district court properly instructed the jury based on Ninth Circuit law and made no errors in doing so. To the extent that I heard some rumblings you might disagree, any errors certainly were harmless in this case. Furthermore, Mr. Snapp cannot and did not meet his high burden of proving that the district court should have granted his motion for judgment as a matter of law. And that's why we request that this court affirm the judgment entered in this case. Thank you very much. Now, just real quick, he never sued the insurance company over disability, as I understand it? Not to my knowledge. I believe he made some, wrote some letters to various departments, but I don't believe there was a lawsuit. Thank you. Okay, thank you. I'd like to make a couple points in rebuttal. Number one, with respect to whether there was, whether the employer proved that Snapp could not be reasonably accommodated, I want to point out, I want to correct counsel's statement that there was not a release in the record. There was evidence from two doctors. One was Dr. Hertzberg. This is the individual who actually did make a release, issue a release for Snapp to return to work, to perform moderate work activity. That's why Cigna turned him down, because they had a release that was submitted at trial. Number two, with respect to the sleep doctor from the VA whose testimony was entered into trial, the sleep doctor believed that Mr. Snapp was an engineer. She didn't realize that he wasn't an engineer. A lot of her testimony and her documents, the context for them was, you know, an engineer with sleep apnea isn't going to work. She did say it was possible that she would issue a release for light-duty type of work. It is also not true that, not correct, that there was no evidence of jobs he could have done. Mr. Freshour, their human resources person, admitted that BNSF had positions that were very viable for Mr. Snapp. That was his testimony at trial. He mentioned customer service, marketing, human resources. They also had light-duty and transitional work. That's number one. I want to talk briefly about Morton. Morton is significant not only for the footnote, but it is the only case you will find that is in a virtually identical position to this case. In Morton, it was determined as a fact that the employer had not engaged in the interactive process. So the context for the decision is, what happens if there's a finding that there has been no interactive process? And that's the issue in this case. It's distinguishable from all the rest of the cases the defense raises. Finally, I want to close with a quote from the transcript at 458, which is the testimony of Ms. Emery regarding the issue of the motion for partial summary judgment and motion for judgment as a matter of law. Question. I didn't ask you that. My question is, you understand that Mr. Snapp was asking for additional rehabilitation benefits and being allowed to return under disability with reasonable accommodation, correct? Answer from Ms. Emery, I will agree if you also include that it has in here accommodations of which the employer can be reimbursed by Cigna for expenses if any are incurred. It was her testimony. She understood it was a request for reasonable accommodation. We were entitled to a judgment as a matter of law on that issue. Thank you. Okay. Thank both sides for your arguments. Case of Snapp versus BNSF submitted for decision.
judges: Fernandez, W. Fletcher, Melloy